UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60027-CR-ZLOCH

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
|    PLAINTIFF, | § |
| | § |
| VERSUS | § |
| | § |
| | § |
| AMADA HERNANDEZ, | § |
| | § |
|    DEFENDANT. | § |
| _____ | § |

DEFENDANT AMADA HERNANDEZ'S
MOTION FOR JUDGMENT OF ACQUITTAL
UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 29

COMES NOW the DEFENDANT AMADA HERNANDEZ, by and through undersigned counsel, and files this, her MOTION FOR JUDGMENT OF ACQUITTAL UNDER FEDERAL RULE OF PROCEDURE 29:

1. STANDARD OF REVIEW.

Before submission to the jury and after the close of the government's evidence, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Federal Rule of Criminal Procedure 29(a). In deciding whether the evidence is sufficient, the Court must determine whether, viewing all the evidence in the light most favorable to the government, a *reasonable trier of fact could find* that the evidence establishes **guilt beyond a reasonable doubt**." United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1999)(quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)), see also United States v. Allen, 302 F.3d 1260, 1262 (11th Cir. 2002).

The only reported cases to cite to Your Honor below are appealed cases where the appellate courts reviewed guilty verdicts for sufficiency of the evidence. Whether the evidence is sufficient to sustain the Defendant's conviction is a question of law which the appellate courts review *de novo*. United States v. To, 144 F.3d 737,    (11th Cir. 1998). The appellate court reviews the evidence in the light most favorable to the government. See United States v. Cooper, 203 F.3d 1279 (11th Cir. 2000). The appellate court is required to affirm the conviction unless, ***under no reasonable construction of the evidence*** could the jury have found the defendant guilty beyond a reasonable doubt. See United States v. Ward, 197 F.3d 1076 (11th Cir. 1999).

Needless to say, the standard of review for an appellate court to reverse a guilty verdict and render a judgment of acquittal only when there was "no reasonable construction of the evidence" is higher than the standard of a "reasonable trier of fact could find" for the trial court's review under Rule 29 at the conclusion of the government's case-in-chief.

2.  THE CHARGES AGAINST AMADA HERNANDEZ.

Defendant Amada Hernandez is charged in five counts of the Indictment:

- Count One with conspiracy to dispense controlled substances in violation of Sections 841 and 846, and
- Counts Five (Lifeline), Six (Lifeline), Seven (Lifeline), and Eight (EZRX) with aiding and abetting the dispensing of controlled substances on various dates for various undercover purchases in violation of Section 841.

Section 841 to Title 21 makes it unlawful to knowingly or intentionally distribute or dispense a controlled substance "except as authorized by this subchapter." That subchapter has an exemption provision in Section 822, which authorizes a person to distribute or dispense a controlled substance if that entity or person is registered to do so by the Attorney General. C & H Wholesale, Lifeline Pharmacy, and EZRX are three pharmaceutical corporations that did in fact have the required licenses to distribute the controlled substances at issue during the relevant time frames of the Indictment. The government agrees that this licensing exemption applies per the stipulation in government's Exhibit 220.

2

Thus, the government's theory of prosecution before Your Honor is that Defendant Amada Hernandez is not eligible to claim this Section 822 exemption because:

- She conspired with pharmacists and doctors who "acted outside the usual course of professional medical practice" to dispense controlled substances per Count 1, and

- She aided and abetted the pharmacists and doctors who actually dispensed the controlled substances and who "acted outside the usual course of professional medical practice" on the substantive dates for the various undercover names, each delineated in Counts 5, 6, 7, and 8.

See United States v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998)(indictment need not aver that the defendant acted outside the course of professional medical practice).

Conspiracy Instruction 87 of the 11th Circuit Pattern Jury Instructions (Crim. 2003) specifically states that conspiracy (Count 1) is a specific intent crime; the second element of that instruction is that "the defendant, knowing the unlawful purpose of the plan, **willfully joined** in it." "Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a coconspirator."

Aiding and abetting Special Instruction 7 of the 11th Circuit Pattern Jury Instructions (Crim. 2003) also has a specific intent requirement for Counts 5, 6, 7, and 8. The Defendant aids and abets another person (doctor or pharmacist) "by **willfully directing**" and "by **willfully joining** together with that person in the commission of the crime …." Further, the Defendant must "**willfully associate** in some way with the crime, and **willfully participate** in it" … "Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the Defendant was a **willful participant** and not merely a knowing spectator."

Willfully Instruction 9.1 of the Eleventh Circuit Pattern Jury Instructions (Crim. 2003), defines the word "**willfully**" as an "act that was committed voluntarily and purposely, **with the specific intent to do something the law forbids**; **that is, with bad purpose either to disobey or disregard the law**."

Thus, the government must prove that Defendant Amada Hernandez:

- knew the bad purpose of the plan to dispense controlled substances "outside the usual course of medical practice,"
- willfully intended to disregard the law that doctors and pharmacists cannot dispense controlled substances "outside the usual course of professional medical practice,"
- willfully joined the conspiracy to dispense controlled substances "outside the usual course of medical practice,"
- willfully joined the doctors and pharmacists to commit the substantive counts of to dispense controlled substances "outside the usual course of medical practice," at both Lifeline Pharmacy (Counts 5,6, & 7) and EZRX (Count 8),
- willfully directed the pharmacists and doctors to dispense controlled substances "outside the usual course of medical practice,"
- willfully associated with the pharmacists and doctors to dispense controlled substances "outside the usual course of medical practice," and
- willfully participated with the pharmacists and doctors to dispense controlled substances "outside the usual course of medical practice."

3. THE FACTS FROM THE GOVERNMENT'S CASE-IN-CHIEF.

Diversion Investigator (D/I) Donna Richards testified that Amada Hernandez is registered with the State of Florida as an owner of C&H Wholesale and Lifeline Pharmacy since 1998 and 1999 respectively. *Government's Exhibits (GE) 201 &202*. Amada Hernandez is not registered with the State of Florida as an owner of EZRX. *GE 209*. On cross examination, D/I Richards admitted that there was no evidence that Amada Hernandez was present or participated in the May 6, 2003, May 7, 2003, or May 13, 2003, inspections at C&H Wholesale by the DEA. D/I Richards likewise agreed

4

that there was no evidence that Amada Hernandez was present or participated during the execution of the search warrant on August 21, 2003, at Lifeline Pharmacy and C&H Wholesale.  Further Amada Hernandez did not sign a sworn affidavit for the Temporary Restraining Order (TRO) hearing nor was she present or participating at the TRO hearing.

Based on the cross of D/Is McRae and Barnes, it is clear that there were no "drug labels" in the office of Amada Hernandez per the inventory.  Rather the drug labels were next door in the spare office where the Government's witness, Michael Hernandez, testified that he would print drug labels for the prescriptions received via the internet.

Emmanuel Antonio testified on direct that he had met Amada Hernandez at Lifeline Pharmacy and that they never had a discussion about fulfillment of internet prescriptions.

Thania Brenes, who worked for EVA Global under the direct supervision of Marlon Miles in the call center at both Lifeline and the One East Broward building, testified that she knew Amada Hernandez as one of the owners of Lifeline Pharmacy.

Theo Antoniou identified Defendant Amada Hernandez as Ama*n*da Hernandez and said that Frank Hernandez introduced her to him as his wife.  Theo Antoniou later testified that he had no understanding of the role of Amada Hernandez.

Mike Hernandez then testified that Frank Hernandez was the sole owner of C&H Wholesale and Lifeline Pharmacy.  Mike Hernandez then testified that when working as a pharmacy technician, he would use the office of Amada Hernandez and particularly her computer.  He confirmed that Amada Hernandez knew that he was using the computer in her office.  When asked what Amada Hernandez did, Mike Hernandez testified that she completed the billing of the insurance companies for the patients of the clinics owned or operated by Accumed.  The clinics included UrgentMed and others in Ocala, Fort Lauderdale, West Palm Beach, and Miami.  Mike Hernandez testified that Amada Hernandez supervised Jasmin Ubillos and Alicia Granadillo to bill the various clinics owned and operated by Accumed.  On cross examination, Mike Hernandez testified that Amada Hernandez did not participate in the internet pharmacy business in general and in particular did not fill internet prescriptions, print internet prescriptions,

use the computer to access the internet prescriptions, or ship the internet prescriptions. Further she did not meet with pharmacists or lawyers to discuss the activities of the pharmacy.

Byron Miranda then testified that he had no interactions with Amada Hernandez but knew that she handled the medical billing for the clinics owned or operated by Accumed.

Julian Lopera then testified that he saw Amada Hernandez daily and knew her as the wife of the owner of Lifeline Pharmacy, Frank Hernandez.  Julian Lopera never testified that Amada Hernandez was an owner of Lifeline Pharmacy.

Paul Randall of the Florida Department of Health had serious memory problems and his testimony was neither reliable nor credible --- the Court qualified his testimony as "excruciating" after countless refreshments of his memory from his report.  For a short 10 minute re-direct, he asked to review his report on four occasions to refresh his memory about conversations with Edgar Cruz and Thomas Walker.  Yet he testified as if it was yesterday and not six years ago and over 600 inspections later that he met with Amada Hernandez and discussed the inspection report --- never needing to refresh his memory for her, of course.  In his six page report, there was not one mention of any interaction with Amada Hernandez.  Nothing about Amada Hernandez in his testimony is believable except that Amada Hernandez signed page 4 of GE 1.50.

However, assuming that his testimony is somehow taking the evidence in the light most favorable to the government, Paul Randall testified that Amada Hernandez signed for, received, and was explained the community pharmacy inspection sheet (Page 4 only of GE 1.50) that he completed for Lifeline Pharmacy on March 5, 2003.  He testified that she understood the sheet, met with her for a "short period of time," "towards the end," and she was "low key."  The only internet pharmacy issue testified about from the redacted inspection sheet for the community pharmacy Lifeline on March 5, 2003, was the lack of a proper daily log for the "internet prescriptions."

Retired D/I Chiavaro testified that the October 10, 2003, suspension of the DEA registration for C&H Wholesale and Lifeline Pharmacy was served on Amada Hernandez in Davie, Florida.

4. SUFFICIENCY OF THE EVIDENCE ON APPEAL.

Mere presence at the locale of an alleged conspiracy, guilty knowledge, guilt by association with alleged co-conspirators, sympathetic observation of alleged co-conspirators, flight from law enforcement, or a prior record with alleged co-conspirators each are independently not sufficient to prove a conspiracy. See United States v. Brazel, 102 F.3d 1120, 1131-32 (11th Cir. 1997); United States v. Hernandez, 896 F.2d 513, 519 (11th Cir. 1990)(holding that presence at illegal drug transaction, walking away from the illegal drug deal, and then talking on a fake telephone to evade detection was not sufficient evidence of knowledge of the conspiracy); United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997); United States v. Lyons, 53 F.3d 1198, 1201 (11th Cir. 1995)(holding that a showing of **knowing participation** is required).

Rather the government must prove more than mere presence and guilt by association. It must prove beyond a reasonable doubt that:

- Amada Hernandez had a **specific intent to join the conspiracy** in order to prove her knowing and voluntary participation in the conspiracy. United States v. Calderon, 127 F.3d 1314, 1326 (11th Cir. 1997)(holding that the receipt of a princely sum of $150,000 for only a few days work suggested the trip was for illegal drugs).

- The conspiracy is something that Amada Hernandez wished to bring about, and seek by her actions to make it succeed. See United States v. Newton, 44 F.3d 913, 921-22 (11th Cir. 1994)(holding that there was no evidence that the defendant agreed through any act to join the conspiracy even though he rented a house for the leader of the conspiracy where the planning occurred).

- The **activities of Amada Hernandez are linked** with the illegal activities of other co-conspirators. See United States v. Young, 39 F.3d 1561, 1566 (11th Cir. 1994).

- Amada Hernandez's **conduct in fact furthered** the aims of the conspiracy. See United States v. Perez-Tosta, 36 F.3d 1552, 1558 (11th Cir. 1994)(holding that inspecting a shrimp boat used for importing cocaine, carry keys registrations for a truck with a concealed compartment, and conducting counter surveillance

7

- against DEA agents was not sufficient evidence of voluntary participation in a conspiracy).
- Amada Hernandez knew that her conduct furthered the aims of the conspiracy. See United States v. Perez-Tosta, 36 F.3d 1552, 1558 (11th Cir. 1994).
- There was interdependence between Amada Hernandez and one of the alleged co-conspirators. See United States v. Toler, 144 F.3d 1423, 1430 (11th Cir. 1998).
- Amada Hernandez had knowledge of the conspiracy's essential features, aims, and broad scope. See United States v. Toler, 144 F.3d 1423 (11th Cir. 1998).

In United States v. Toler, 144 F.3d 1423, 1433 (11th Cir. 1998), the Eleventh Circuit reversed and vacated the guilty verdict because the government failed to show how the defendant **affirmatively agreed to participate** in the conspiracy, mere access to her apartment to store, cook, and sell crack cocaine was not sufficient.

In United States v. Perez-Tosta, 36 F.3d 1552, 1558 (11th Cir. 1994), there was insufficient evidence of the **specific intent to voluntary participate** in the conspiracy to import cocaine when the defendant inspected a shrimp boat used to import cocaine, was a runner for keys and registration papers of a truck with concealed compartments, and then ran counter surveillance against undercover agents responding "What's wrong with that?" citing United States v. Kelly, 749 F.2d 1541, 1545 (11th Cir. 1985)(holding that inspection a shrimp boat later used to smuggle illegal drugs, presence at a meeting of key conspirators, and sitting in a parked car near the house where the offloading crew waited was insufficient evidence of voluntary participation but rather was evidence of an acquaintance with a key conspirator)

In United States v. Aponte-Suarez, 905 F.2d 483, 491 (1st Cir. 1990), the First Circuit reversed and vacated a guilty verdict for a defendant land owner who initially asked for money to use his land for an airstrip to import illegal drugs but was rejected. In turn, the defendant introduced the drug smugglers to another farm owner who complied and participated. The defendant did not participate in any subsequent efforts toward successful completion of the drug importation ventures. Although the defendant knew that a drug importation scheme was taking place because he was asked to join it, the government presented **no evidence that he participated in the venture at all**

8

**besides the mere introduction of another farm owner**.  Mere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting.  Mere presence at scene of crime is not evidence of guilt. United States v. Francomano, 554 F.2d 483, 486 (1st Cir. 1977) (citing Nye & Nissen v. United States, 336 U.S. 613, 619 (1949). An accused must "in some sense promote [the conspiracy] himself, make it his own, have a stake in its outcome." United States v. Falcone, 109 F.2d 579, 581 (2d Cir. 1940).

5.   THE EVIDENCE IS INSUFFICIENT UNDER RULE 29.

First, Amada Hernandez is not a listed owner of EZRX.  Assuming mere listing as an owner is proof of specific willful knowledge and willful participation to aid and abet a pharmacist or doctor to dispense controlled substances at EZRX (Count 8) outside the usual course of medical practice, she is not a listed owner.  It is noteworthy that the Indictment mistakenly lists Amada Hernandez as an owner of EZRX.  There is no evidence of any affirmative, active, or willful joining or participation with the EZRX operations in New Jersey.

Nothing has shown that Amada Hernandez willfully joined or associated herself with the alleged criminal venture at Lifeline Pharmacy.  The government must show beyond a reasonable doubt that she willfully joined and then affirmatively and voluntarily participated.  Her mere presence at the locale of Lifeline Pharmacy is not sufficient to show *actus reus*.  There is no evidence of her specific intent to join the conspiracy or her knowing and voluntary participation.  She did not supervise a pharmacist or doctor or call center employee from EVA Global, much less even converse with one.  She never met with Theo Antoniou or Emmanuel Antonio or Larry Pinkoff about internet questionnaires, prescriptions, or fulfillment.  There is no link of Amada Hernandez's activities to the activities of any of the alleged co-conspirators.  No evidence of any sort of link of interdependence.  The government has failed to show any evidence of her affirmative and active participation that she **willfully joined**, **willfully associated**, **willfully participated**, or **willfully directed** anyone.  Who?  What *actus reus*?

Not one government witness has testified that Amada Hernandez **willfully participated** in the fulfillment of internet prescriptions by either doing it herself as a willful participant or willfully directing those who did.  There is nothing in the evidence that she did something by her actions to assist this alleged conspiracy to succeed or that she wished to bring about this alleged conspiracy.  Nothing in the evidence that Amada Hernandez's conduct in fact furthered the aims of the conspiracy --- much less that she knew her conduct (whatever that may be) did in fact further the aims of the conspiracy.  There is no evidence that she promoted internet fulfillment or made it her own.

The conspiracy as charged is the agreement with the doctors and pharmacists to dispense controlled substances outside the usual course of medical practice.  First there is no evidence of her knowledge of the unlawful plan or the bad purpose of the plan to dispense controlled substances outside the usual course of medical practice.  Knowledge of no logs of the internet prescriptions is a far cry from knowledge --- particularly because there is no evidence the logs were for controlled substances.  She never met with a pharmacist or a doctor or EVA Global representative to discuss internet fulfillment outside the usual course of medical practice.  While Department of Health Inspector Paul Randall did allegedly discuss the need for a daily log for the internet prescriptions, he did not testify that he told Amada Hernandez the internet prescriptions were not valid or even for controlled substances.  A later letter addressed to Lifeline who was represented by attorney Ben Metsch even admits that the internet prescriptions "may be invalid."  This is a far cry from proving that Amada Hernandez had knowledge of the unlawful plan or the bad purpose of the plan to dispense controlled substances outside the usual course of medical practice.

Apparently the government's theory for the doctors and pharmacists is that the doctors were in one state and the patients in another per the information on the medical questionnaires and the prescription labels, and thus, each must have known that the prescription was not valid and lacked a face to face evaluation --- this to show that both the doctors and pharmacists knew about the illegal nature and bad purpose of internet fulfillment.  Be that as it may, there is not one iota of evidence linking Amada Hernandez to that knowledge, whether it is a meeting with someone from EVA Global or a pharmacist or doctor.  Assuming knowledge of the bad purpose and no face-to-face,

10

there certainly is no evidence of some affirmative act, willful joining, or willful directing of any of the alleged co-conspirators.

From the case law reversing for insufficiency of the evidence, Amada Hernandez never inspected a boat to transport illegal drugs, never ran counter surveillance, never walked away when inspectors arrived, never received a princely sum of money from the internet fulfillment, never maintained keys and registrations of trucks with hidden compartments for illegal drugs, nor did she introduce the EVA Global conspirators to other pharmacies, doctors, or pharmacists for fulfillment.  Even if she did, these acts are insufficient to sustain a conviction.  Nothing in the government's case in chief even comes close to paralleling any of these listed innocent acts.

Rather she is an owner "on paper" --- not sufficient.  Taken a step further, knowing that crack was being stored, cooked, and sold at Lifeline Pharmacy by others would not be, by itself, sufficient evidence of her willful joining or willful association or affirmative participation.  Yet there is no evidence that Amada Hernandez knew about the dispensing of controlled substances outside the usual course of medical practice by the pharmacists at Lifeline.  Assuming she did know that they were storing, cooking, and selling crack cocaine, there is no evidence of her willful joining or participation in the conspiracy or he willful directing to aid and abet the doctors and pharmacists to dispense controlled substances at Lifeline Pharmacy outside the usual course of professional medical practice.

6. PRAYER.

WHEREFORE, DEFENDANT AMADA HERNANDEZ, moves this Honorable to enter a judgment of acquittal for Amada Hernandez for Courts One, Five, Six, Seven, and Eight for the foregoing reasons.

    Omar F. Guerra Johansson, P.A.
    Counsel for Defendant
    Wachovia Tower, Suite 700
    One East Broward Boulevard
    Fort Lauderdale, Florida 33301

11

                        Telephone: (954) 745-7517
                        <u>Lawfirm@LauderdaleCriminalLawyer.com</u>

                        <u>/s/ Omar F. Guerra Johansson</u>
By:  Omar F. Guerra Johansson, Esquire
      Florida Bar No. 18141

### C<small>ERTIFICATE OF</small> S<small>ERVICE</small>

I certify that on February 25, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                        <u>/s/ Omar F. Guerra Johansson</u>
                        Omar F. Guerra Johansson, Esquire
                        Counsel for Defendant Amada Hernandez